1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

8
9
10

| | |
|---|---|
| VERONICA TUNUCCI,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant. | Case No. 23-cv-00424-LB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 81–82 |

11
12
13
14
15
16

**INTRODUCTION**

The plaintiff, who is representing herself, worked for the City and County of San Francisco (CCSF) for roughly four years as a supervisor in the office of the Assessor-Recorder. The CCSF disciplined her and then fired her. She claims that the firing was gender discrimination and retaliation for her complaints about her manager, in violation of federal and state law. The parties cross-claimed for summary judgment. The court grants the CCSF summary judgment.

17
18
19
20
21
22
23
24
25
26
27
28

# STATEMENT

## 1. Summary of Facts From Earlier Order Denying Summary Judgment

The court's earlier order recounts relevant facts:[1]

> The plaintiff was a permanent civil-service supervisory employee with the Office of the Assessor-Recorder (a department of the CCSF), from December 30, 2017, until her dismissal on March 18, 2022.[2] She was responsible for the day-to-day operations of the department, including preserving recorded documents, collecting fees and taxes, and supervising subordinate employees.[3] She was required to report any incidents of discrimination, retaliation, or harassment to HR or the Equal Employment Opportunity unit.[4] Her supervisor was Manager of Recorder and Transaction Divisions Kurt Fuchs, who in turn reported to Director of Operations Douglas Legg, who reported to Deputy Director of Administration and Finance Rachel Cukierman.[5]

> The allegedly protected speech and disciplinary measures are summarized in the next sections.

## 1. Verbal Warning

> The plaintiff says that the department issued a verbal warning to her on October 26, 2018 — after she reported discriminatory conduct that Mr. Fuchs exhibited to Edward Smith and Fanny Truong based on their race — accusing her of "tone" issues.[6] The CCSF points to complaints that it received about the plaintiff's inappropriate workplace behavior, resulting in the verbal warning.

> The complaints and verbal warning are summarized in an email that Mr. Fuchs sent to the plaintiff on October 30, 2018. The complaints were based on the following: (1) an email chain from August 9 and 10, 2018, between the plaintiff and Ms. Cukierman where the plaintiff complained that the Recorder Division was not included in a redesign project, Ms. Cukierman responded that it was and asked for a meeting, and the plaintiff responded, "I have no desire to talk with Rachel" and that she was "tired of feeling demoralized by this organization;" and (2) an email chain from October 16 and 18, 2018, and another on October 24 between the plaintiff and Public Service and Exemptions Manager Derek Ah'Nin, with her views on (1) the unrealistic timeline and "less than stellar" plan for a scanning

---

[1] The plaintiff has since submitted an organizational chart showing that Mr. Legg reported to Assessor-Recorder Carmen Chu, not Ms. Cukierman. Org. Chart, Ex. 2 to Pl.'s Decl. – ECF No. 81-1 at 10. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Tunucci Dep., Ex. A to Bandoma Callado Decl. – ECF No. 62-1 at 15–16 (pp. 53:16–54:13). The plaintiff objected to the CCSF's evidentiary submissions for bias or "lack of objectivity." Reply – ECF No. 66 at 23–24. Disputes of fact are relevant to the summary-judgment determination.

[3] Tunucci Dep., Ex. A to Bandoma Callado Decl. – ECF No. 62-1 at 17–18 (pp. 55:14–56:14).

[4] *Id.* at 25–26 (pp. 119:22–120:13); Nelly Decl. – ECF No. 62-3 at 2 (¶ 3).

[5] Tunucci Dep., Ex. A to Bandoma Callado Decl. – ECF No. 62-1 at 18 (pp. 56:15–17); First Am. Compl. (FAC) – ECF No. 29 at 11–12 (¶ 11), 18 (¶ 25); Answer – ECF No. 34 at 2 (¶ 11).

[6] Tunucci Decl. – ECF No. 57-1 at 3–4 (¶¶ 8, 11).

United States District Court
Northern District of California

project by Mr. Smith, and (2) Mr. Ah'Nin's failure to appreciate Mr. Smith's help and his questioning Mr. Smith's honesty and integrity.

When Mr. Fuchs and a senior HR analysis met with the plaintiff on October 26 to issue the verbal warning, they discussed two incidents reported to HR: (1) the plaintiff's interruption of a conversation on October 10 that HR Analyst James Galileo was having with another employee in the mail room, where the plaintiff complained in a "raised and agitated manner in front of subordinate staff" about the new mailroom workstation set-up; and (2) the plaintiff's October 24 confrontation of Mr. Ah'Nin in front of another subordinate employee, where the plaintiff accused Mr. Ah'Nin in a raised voice of setting unreasonable performance expectations to railroad Mr. Smith.

Mr. Fuchs said that emails were "inappropriate. . . [,] accusatory and chastising and [we]re unprofessional for a supervisor to send to other Department employees" and that "public outbursts" were inappropriate workplace behavior by a supervisor. He warned that workplace communications must be appropriate and respectful, emails with "accusatory and chastising tones" were inappropriate, and "public outbursts in front of subordinate staff are never appropriate, as it sends a message that you are undermining management decisions."[7]

The plaintiff identifies other emails sent during this timeframe: (1) an October 9, 2018, email to Manager of HR and Training Jonathan Nelly about Mr. Fuchs's treatment of Ms. Troung, saying that he "was visibl[y] angry, towered above Fanny and was intimidating and used his power to intimidate;"[8] and (2) an October 15, 2018, email to Mr. Nelly about Mr. Fuchs's bullying and discriminatory behavior based on race and age:

> I have had three meetings with HR representatives over the last 10 days regarding Kurt's unethical behavior and various other meetings to discuss these topics, starting on 3/30/2018 continuing sporadically till this day. When I met with you many months ago to describe what appeared as Kurt's racial, discriminatory, or at a minimum, culturally insensitive management practices. I pointed out Kurt's physical presence and body language; Kurt is a very tall, white man, and his body language becomes aggressive in his anger. You understood this dynamic. I had the same conversation with Rachel and Rachel didn't seem to get it. Let me state again, what I have observed, Kurt towering in anger over the Asian/Hispanic women in the department, his physical presence and demeanor is intimidating and shuts down communication. That same behavior to Edward, a black employee, is reminiscent of racial, white America and the discriminatory behavior whites inflicted on the black community for hundreds of years; culturally insensitive.

> Kurt has singled out Edward, the only black man in the department[,] and has created a false narrative regarding his work to the extent some of his comments are fabrications and not based on truth or reality and Kurt is well aware of that. He passes his derogatory comments and assessments on to Douglas and then that becomes Douglas' truth too. Douglas repeats the same assessment of employees in the Recorder Division as Kurt; obviously Kurt feeds Douglas with his bias opinion on employees, including me.[9]

---

[7] Nelly Decl. – ECF No. 62-3 at 2 (¶ 4) & Email, Ex. B to *id.* – ECF No. 62-3 at 66–67; Email, Ex. D5 to Pl.'s Decl. – ECF No. 57-1 at 53.

[8] Email, Ex. A1 to Pl.'s Decl. – ECF No. 57-1 at 15.

[9] Email, Ex. D2 to Pl.'s Decl. – ECF No. 57-1 at 41–42.

### 2. Written Warning

The plaintiff says that a written warning issued to her on November 18, 2018, was in retaliation for a "Charge of Retaliation" that HR Analyst Gerald Buss filed on her behalf with HR-Equal Employment Opportunity (HR-EEO), claiming that the October 26 verbal warning was in retaliation for her complaints.[10] The written warning charges a violation of the October 26 verbal warning by the plaintiff's sending an email on November 9 to Mr. Ah'Nin accusing him of fabricating a November 5 incident, where the plaintiff allegedly contacted a staff member about Mr. Smith's scan tasks.[11] The November 9 email from Mr. Ah'Nin to the plaintiff is as follows:

> It was brought to my attention that you are still approaching my staff with questions regarding the scanning performance standards for the Public Service Division. In response, I am sending you this e-mail to reiterate my previous response and request that all questions regarding this subject be brought directly to me. I have discussed this with my team, and both myself and my team members consider this questioning to be disruptive to their work. I hope this is the last time I will have to address this issue with you, and I look forward to working with you and the REC team in the future. If you have any questions or concerns, please let me know.[12]

The plaintiff responded on November 10:

> This accusation comes without any merit. I have not had any contact with your staff regarding scanning performance standards for Public Service Division in the past few weeks. This latest accusation is baseless and didn't happen.

> You discussed me with your team? I feel that is inappropriate when you haven't discussed the allegations with me first and I haven't had any discussions with your staff regarding scanning in weeks, nor do I plan to in the future. Nor have you given me the opportunity to discuss these supposed accusations.

> I find this very offensive and out of line. I have a great relationship with the employees of Public Service; I do not believe there is one employee who will say the contrary.

> I believe you are fabricating a narrative that is not true, seeks to destroy relationships and this creates a negative work environment.

> I would be happy to discuss this with you and a representative of Human Resources.[13]

### 3. Five-Day Suspension

The plaintiff says that the Department suspended her for five days on August 21, 2019, in retaliation for her (1) reporting bullying and a hostile work environment to Messieurs Legg and Nelly on March 28, (2) updating her HR-EEO complaint on April 8, and (3) filing a formal charge of discrimination on June 4.[14] The charges are in the June 14, 2019, Notice of Proposed Disciplinary Action charging insubordination and

---

[10] Cover Email and Compl., Exs. G1–G2 to Pl.'s Decl. – ECF No. 57-1 at 66, 68–69.

[11] Written Warning, Ex. C to Nelly Decl. – ECF No. 62-3 at 69–70.

[12] Email Chain, Ex. I1 to Pl.'s Decl. – ECF No. 57-1 at 84.

[13] *Id.* at 83–84.

[14] Pl.'s Mot. – ECF No. 57 at 15–17; Emails, Exs. K1–K4 to Pl.'s Decl. – ECF No. 57-1 at 124, 128, 130, 132–34.

unprofessional conduct. The insubordination charge was based on the plaintiff's conduct (1) instructing staff to record Parcel Division deeds, contrary to Mr. Fuchs's May 16 directive not to do so, and (2) failing to coordinate adequately with a vendor and others on the design of the new Recorder System, and after being warned of these deficiencies on April 16, stepping down and refusing on May 20 to complete a task necessary to accomplish her transfer out of that role. The charge of unprofessional conduct was the plaintiff's communicating with other CCSF departments to justify her actions in ignoring Mr. Fuchs's directive not to record the Parcel Division deeds.[15]

### 4. Fifteen-Day Suspension

The charges are in the February 4, 2020, Notice of Proposed Disciplinary Action recommending a fifteen-day suspension: (1) failure to follow instructions; (2) unprofessional conduct; and (3) inappropriate communication.[16]

The charge of failure to follow instructions identified a June 25, 2019, email from Mr. Legg to the plaintiff that long emails were not productive and telling her not to send emails when she didn't agree with Mr. Fuchs's or other staff members' decisions regarding processes or projects. Instead, she was to present them to Mr. Legg and Mr. Fuchs at biweekly meetings. The charge identified an exchange where Mr. Legg told the plaintiff that a delay of one or two days was acceptable for recording mailed-in documents, and she responded that she was concerned that it violated the law, said that she would be more comfortable if "Legal" reviewed the issue, and cc'd the chief tax attorney with the City Attorney's office. Mr. Legg responded that one business day was the practice normally, this was unlikely during the implementation of the new system (and two days was acceptable), concerns about legality should be raised with her manager, Mr. Fuchs, and that she should not copy the City Attorney's office on her emails. Instead, the department would raise any issues if it could not resolve them internally.[17]

The Notice identified three incidents of not following instructions: (1) copying the City Attorney on December 3, 2019, on her email responding to Mr. Legg's question about a subpoena sent to her at the office (apparently related to a personal unlawful detainer) despite the previous instruction that she should not cc the attorney; (2) cc'ing the City Attorney on an email sent on December 18 about Trust Agreement requirements; and (3) cc'ing the City Attorney on an email sent on December 23 about reviewing documents to see whether she had the documentation needed to waive the transfer tax on a 1031 like-kind exchange.[18] The emails to the City Attorney also were the basis for the charge of inappropriate communication.[19] The unprofessional conduct was becoming angry during a November 21, 2019, conversation with Ms. Cukierman that was initially pleasant and then devolved (on the main floor of the office around others) into discussions about solutions for maintaining day-to-day operations due to short staffing during Recording System training. The plaintiff became upset when she had to retain one task and then talked about her earlier suspension.[20]

---

[15] Notice, Ex. D to Nelly Decl. – ECF No. 62-3 at 72–75.

[16] Notice, Ex. F to *id.* – ECF No. 62-3 at 84–93.

[17] *Id.*

[18] *Id.* at 85–88.

[19] *Id.* at 90–91.

[20] *Id.* at 89–90.

United States District Court
Northern District of California

On November 24, 2021, an arbitrator found that (1) the Department established just cause for the suspension because its efforts to correct the plaintiff's behavior were unsuccessful, and (2) the first incident of not following instructions was not sustained (the subpoena matter), which meant that the penalty was reduced from a fifteen-day suspension to a twelve-day suspension.[21]

### 5.  Thirty-Day Suspension and Dismissal

The charges for the thirty-day suspension are in the August 21, 2020, Notice of Proposed Disciplinary Action: (1) inappropriate communication; (2) unprofessional/disruptive conduct; and (3) failure to follow instructions.[22] The Notice summarizes the prior disciplinary actions.[23]

The charge of inappropriate messages references Mr. Legg's June 25, 2019, email telling the plaintiff not to send long emails when she did not agree with decisions and instead to bring them up at the regular bi-weekly meeting with Messieurs Fuchs and Legg. It then lists a series of emails that the plaintiff sent that were "inappropriate and unprofessional": (1) a back-and-forth exchange on January 15, 2020, with Mr. Fuchs about billing codes and related issues (characterized as involving "incessant questioning and use of damaging and disparaging remarks" that were "highly inappropriate" and unprofessional); (2) a back-and-forth exchange on January 15, 2020, with Ms. Cukierman about the scan-first process in the mailroom (involving "constant[] push back" on the Department's decision and continued criticism); (3) a back-and-forth exchange on January 29, 2020, with Mr. Fuchs about why the plaintiff disregarded his instruction to have a certain specialist attend a demo for the new Recorder system and instead brought someone else (an exchange that included accusations about Mr. Fuchs's management); (4) a March 19 email to a project manager about processing liens and complaining about the scanning process that Mr. Fuchs implemented; and (5) a back-and-forth exchange on March 23, 2020, with Mr. Fuchs about remote-desktop access (characterized as aggressive and sarcastic).[24]

The charge of unprofessional/disruptive conduct references the plaintiff's May 16, 2019, decision to stop being the lead on the Recorder System project and subsequent insertion of herself into projects unrelated to her role as the Recorder Division supervisor. It then lists incidents in January 2020 through July 2020, including asking an SFPUC employee about projects, talking to a vendor about data conversion, telling a taxpayer not to comply with Mr. Fuchs's instructions, and voicing her disapproval with a decision to extend probation to four employees (which happened during her fifteen-day suspension and vacation) in an email cc'd to the four employees.[25]

The charge of failure to follow instructions referenced the January 2020 issue about who should attend the demos and identifies the issue: "constant pushback of your manager's decision [is] insolent behavior [that] creates confusion and undermines"

---

[21] Decision, Ex. F to Badoma Callado Decl. – ECF No. 62-1 at 106.

[22] Notice, Ex. I to Nelly Decl. – ECF No. 62-3 at 203–20.

[23] *Id.* at 204.

[24] *Id.* at 205–10.

[25] *Id.* at 210–16.

United States District Court
Northern District of California

Department efforts and "demonstrates [that] you have an issue with respecting authority following the chain-of-command."[26]

HR suspended the plaintiff for thirty days on December 4, 2020.[27]

The charges for the dismissal are in the January 18, 2022, Notice of Proposed Dismissal: (1) inappropriate communication; (2) unprofessional conduct; (3) failure to follow directives; (4) violation of the assessor-recorder's standards-of-conduct policy, and (5) violation of the CCSF's respect policy.[28] The Notice summarizes the prior disciplinary actions.[29]

The charge of inappropriate communication was based on the plaintiff's August 20, 2021, response to an email to Mr. Fuchs, who asked why she scanned documents in the mailroom (when there was a scanner in the Recorder's area). The plaintiff responded that Mr. Fuchs was accusing her of "doing something" and then, when he said he was not, rehashed the disciplinary actions, saying that they were founded on untruths or fabrications.[30] The charge of unprofessional conduct was based on the plaintiff's challenges to management decisions about policies and procedures: pushback on remote work policies, issues with Scan First in the mailroom, questioning the processing of a document, and questioning decisions unrelated to her job.[31] The charge of failing to follow directives was based on the plaintiff's failure to follow Mr. Fuchs's directives on September 20, 2021, about reviewing documents for deficiencies.[32] The last violations of the standards-of-conduct and respect policies were based on a "lack of willingness or ability to communicate and behave appropriately and professionally, and as such violates" these policies.[33]

On March 18, 2022, the CCSF dismissed the plaintiff from her job.[34]

## 6. DHR-EEO Findings

On September 9, 2021, the Department addressed the plaintiff's complaint (referenced in sections 2 and 3) about the retaliation from her complaints about Mr. Fuchs's discriminatory conduct based on race to staff members. It held that there were legitimate business reasons to discipline the plaintiff, fourteen documented incidents supported the verbal and written warnings and proposed dismissal, and there was insufficient evidence to support the conclusion that Mr. Fuchs retaliated against the plaintiff for her complaint about him.[35]

---

[26] *Id.* at 215–18.

[27] Notice, Ex. J to Nelly Decl. – ECF No. 62-3 at 355.

[28] Notice, Ex. K to Nelly Decl. – ECF No. 62-3 at 368–69.

[29] *Id.* at 369–70.

[30] *Id.* at 371.

[31] *Id.* at 371–72.

[32] *Id.* at 372–73.

[33] *Id.* at 373–74.

[34] Notice, Ex. L to Nelly Decl. – ECF No. 62-3 at 454–64.

[35] Decision, Ex. H to *id.* – ECF No. 62-3 at 197–201.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**2. Additional Facts**

During her employment, the plaintiff was a member of a union, the Municipal Executives Association.[36]

In June 2020, the plaintiff grieved her five-day suspension in binding arbitration before a mutually selected third-party neutral. The arbitrator issued findings of fact and conclusions of law and upheld the charges of insubordination and unprofessional conduct and the suspension.[37] The plaintiff filed a petition for writ of administrative mandamus in San Francisco Superior Court, alleging that she did not receive a fair hearing and that the arbitrator's decision was not supported by substantial evidence. On August 4, 2021, the court denied the petition on the ground that substantial evidence supported the findings of fact, conclusions of law, and award.[38] Following the plaintiff's appeal, the First District Court of Appeal affirmed the Superior Court's decision.[39]

As discussed above, an arbitrator reduced the fifteen-day suspension to twelve days and otherwise affirmed the disciplinary action.

During the *Skelly* hearing on the thirty-day dismissal, the plaintiff and her union representative submitted responses to the charges. The City submitted an addendum "described as a clarification of inaccuracies and misrepresentations made in [the plaintiff's] response." The union representative objected in an email that this was inappropriate because the employer's role at an in-person *Skelly* hearing would be "limited to responding to clarifying questions posed by the *Skelly* Officer" and that allowing the addendum afforded the City two bites at the apple in violation of *Skelly*.[40] The hearing officer upheld the suspension.[41] In March 2022, the City and the

---

[36] Tunucci Dep., Ex. A to Bandoma Callado Decl. – ECF No. 62-1 at 15–16 (pp. 53:16–54:13).

[37] Arbitration Award, Ex. C to *id.* – ECF No. 62-1 at 40–61.

[38] Order, Ex. D to *id.* – ECF No. 62-1 at 63–66.

[39] Order, Ex. E to *id.* – ECF No. 62-1 at 68–79.

[40] Email, Ex. B to Pl.'s Decl. – ECF No. 83-1 at 6–8.

[41] *Skelly* Mem., Ex. J. to Nelly Decl. – ECF No. 62-3 at 357–66. A *Skelly* hearing derives its name from *Skelly v. State Personnel Board*, 15 Cal. 3d 194 (1975).

1   plaintiff's union scheduled the arbitration for the thirty-day suspension for August 22, 2022. On

2   August 3, 2022, the union cancelled the arbitration.[42]

3       Before the CCSF dismissed the plaintiff, the *Skelly* officer conducted a hearing and found

4   sufficient grounds for dismissal. The City dismissed the plaintiff on March 18, 2022, for the

5   reasons summarized above.[43]

6       Following the DHR-EEO findings summarized above, the plaintiff filed an appeal with the

7   City's Civil Service Commission, contesting the DHR's determination that she had presented

8   insufficient evidence of retaliation.[44]

9       The plaintiff identified additional communications between CCSF employees discussing her

10  suspensions and termination. In April 2019, Mr. Nelly told Mr. Buss that the CCSF was

11  "considering reassigning" the plaintiff. Mr. Buss responded, "Ok, but that would get tricky

12  because the burden will fall on us to show it isn't retaliatory." Mr. Nelly replied, "I'll forward you

13  her last response. Yeah, that's what I told [Ms. Cukierman], that we would have to have a business

14  reason to reassign her and not base it off the fact that she's not performing as a SME."[45]

15      In an email to Messieurs Nelly and Buss in November 2019, Ms. Cukierman said, "Let's talk

16  today. We need to start working on [the plaintiff's] next discipline."[46] Mr. Nelly said in a separate

17  November 2019 email:

18          We spoke to Douglas this afternoon and even though they think that Veronica can't
            sabotage the project and that we would then have more on her to discipline her,
19          we're still going to put together a timeline for CAT and frame it that we can't have
            her around during the project because of her unpredictable behavior, which we feel is
20          detrimental to the success of the project and maybe also long term culture of the
            Recorder division and department. And include what Jerry said that discipline is

---

[42] Email, Ex. A to Rogoyski Decl. – ECF No. 62-2 at 4–5. The court denies the plaintiff's motion to disqualify Mr. Rogoyski from representing the CCSF and to strike his declaration (ECF No. 62-2) and reply (ECF No. 85): the plaintiff has not shown that Mr. Rogoyski's statements warrant striking under Federal Rules of Civil Procedure 11 or 12. Mot. – ECF No. 86.

[43] Notice, Ex. L to Nelly Decl. – ECF No. 62-3 at 454–55.

[44] Civ. Serv. Comm'n Appeal, Ex. A to Bandoma Callado Decl. – ECF No. 82-1 at 4–7 (AR_CSC 006–009).

[45] Conversation, Ex. 18 to Pl.'s Decl. – ECF No. 81-1 at 85–86 (cleaned up).

[46] Email, Ex. 19 to *id.* – ECF No. 81-1 at 89 (cleaned up).

United States District Court
Northern District of California

supposed to change behavior and we have no confidence that another suspension will help her change her behavior, so we shoot for termination and have CAT or DHR tell us that wouldn't be appropriate.[47]

In June 2021, an independent reviewer released a report about San Francisco EEO practices, policies, and procedures beginning in October 2020.[48] Among other findings, the reviewer determined that (1) CCSF employees had "lost faith in the City's EEO complaint process,"[49] (2) complaints were not resolved in a "timely and efficient fashion,"[50] and (3) although "the outcomes of EEO investigations [were] frequently determined by investigators' conclusions about the credibility of complainants and respondents, . . . [the] criteria for making these credibility determinations [were] not consistently or objectively administered."[51]

### 3.  Procedural History

The complaint has seven claims, all against the City and County of San Francisco: (1) retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and California's Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940(h); (2) retaliation for whistleblower-protected speech, in violation of the First Amendment to the U.S. Constitution and state law; (3) breach of her collective-bargaining agreement (CBA), in violation of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and Cal. Labor Code § 1126; (4) gender discrimination, in violation of Title VII; (5) a violation of her due-process and equal-protection rights under the Fourteenth Amendment, (6) a violation of her constitutional rights (the First and Fourteenth Amendment violations), in violation of 42 U.S.C. § 1983; and (7) failure to prevent retaliation, discrimination, and harassment, in violation of Title VII and FEHA.[52]

---

[47] Email, Ex. 20 to *id.* – ECF No. 81-1 at 97.

[48] Report, Ex. C to Pl.'s Decl. – ECF No. 83-1 at 15–23 (pp. 4–5, 13–16, 26, 28).

[49] *Id.* at 18 (p. 13).

[50] *Id.* at 21 (p. 16).

[51] *Id.* at 22 (p. 26).

[52] FAC – ECF No. 29 at 53–70 (¶¶ 81–143).

1    The court has jurisdiction over the federal claims and supplemental jurisdiction over the state

2    claims. 28 U.S.C. §§ 1331, 1367. The parties consented to magistrate-judge jurisdiction.[53] *Id.*

3    § 636(c). The court held a hearing on March 27, 2025.

4

5    **SUMMARY-JUDGMENT STANDARD**

6    The court must grant summary judgment where there is no genuine dispute as to any material

7    fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

8    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may

9    affect the outcome of the case. *Id.* at 248. A dispute about a material fact is genuine if there is

10   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

11   The party moving for summary judgment has the initial burden of informing the court of the

12   basis for the motion and identifying portions of the pleadings, depositions, answers to

13   interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

14   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party

15   must either produce evidence negating an essential element of the nonmoving party's claim or

16   defense or show that the nonmoving party does not have enough evidence of an essential element to

17   carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

18   F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)

19   ("When the nonmoving party has the burden of proof at trial, the moving party need only point out

20   'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477

21   U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the

22   movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the

23   moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

24   If the moving party meets its initial burden, then the burden shifts to the nonmoving party to

25   produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving

26   party carries its initial burden, the adverse party may not rest upon the mere allegations or denials

27

28   _____

[53] Consents – ECF Nos. 6, 10.

United States District Court
Northern District of California

of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the nonmoving party and draws all factual inferences in the nonmoving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

In ruling on a summary-judgment motion, the court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). It "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In other words, "whatever establishes a genuine issue of fact must *both* be in the district court file *and* set forth in the response." *Id.* at 1029; *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact.").

## ANALYSIS

The parties filed cross-motions for summary judgment on all claims. The court grants the CCSF summary judgment on all claims.

### 1. Claim Three — Breach of Contract

The plaintiff claimed a breach of her CBA on the grounds that the City violated its terms in its employment actions and the union did not fairly represent her interests, all in violation of the LMRA, 29 U.S.C. § 185(a), and Cal. Labor Code § 1126.[54]

---

[54] FAC – ECF No. 29 at 58–59 (¶¶ 101–07).

1    The plaintiff now agrees that the LMRA does not apply to public entities.[55] 29 U.S.C.

2    § 152(2). Even if it did, to prevail against an employer under the LMRA, a plaintiff must prove

3    that (1) she was discharged from employment (2) without just cause, and (3) she filed a grievance

4    with the union, which (4) breached its duty to fairly represent her interests under the CBA by

5    handling the grievance proceedings arbitrarily, discriminatorily, or in bad faith. Ninth Cir. Model

6    Jury Instr. 13.1. A breach of the duty of fair representation occurs where the union's conduct is

7    discriminatory, a bad-faith exercise of judgment, or arbitrary. Conduct is arbitrary when it is a

8    wholly irrational, inexplicable, or unintentional action — such as an irrational failure to perform a

9    ministerial or procedural act — that "substantially injured an employee." *Beck v. United Food &*

10   *Com. Workers Union, Loc. 99*, 506 F.3d 874, 880 (9th Cir. 2007) (union's failure to file a timely

11   grievance, after agreeing to do so, was arbitrary); *Conkle v. Jeong*, 73 F.3d 909, 916 (9th Cir.

12   2009) (personal animus). The plaintiff put forth no evidence that the union breached its duty to

13   fairly represent her interests. To the contrary, the record establishes that it represented her

14   throughout the disciplinary process.

15   The plaintiff also cited California Labor Code § 1126 to support her breach-of-contract claim.

16   It provides that a collective-bargaining agreement between an employer and a labor organization

17   "shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by

18   any party thereto shall be subject to the same remedies, including injunctive relief, as are available

19   on other contracts in the courts of this State." Cal. Labor Code § 1126. Under its plain terms, the

20   statute allows a suit for breach by parties to the CBA: the City and the union. In any event, as

21   discussed in the previous paragraph, the basis for the plaintiff's claim is the union's alleged breach

22   of its duties to her under the CBA, and she provides no evidence to support that claim.

23   The court grants the CCSF summary judgment on claim three.

24

25

26

27   ───────────────

[55] Pl.'s Reply & Opp'n – ECF No. 83 at 22; Def.'s Opp'n & Cross-Mot. – ECF No. 82-2 at 17–21

28   (addressing claim on the merits).

1    **2.    Claims Two, Five, and Six — Constitutional Claims (First and Fourteenth Amendments)**

2        Claim two charges retaliation for the plaintiff's speech in violation of the First Amendment,

3    claim five charges a violation of the plaintiff's due-process and equal-protection rights under the

4    Fourteenth Amendment, and claim six charges a violation of the First and Fourteenth

5    Amendments, in violation of 42 U.S.C. § 1983.[56] The CCSF cannot be vicariously liable under

6    42 U.S.C. § 1983 for the unconstitutional acts of its employees under the theory of respondeat

7    superior.[57] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v.*

8    *Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Fuller v. City of Oakland*, 47 F.3d 1522, 1534

9    (9th Cir. 1995). It can be liable under *Monell* when (1) the plaintiff was deprived of a

10   constitutional right, (2) the municipality had a policy (3) that amounted to deliberate indifference

11   to the plaintiff's constitutional right and (4) was the moving force behind the constitutional

12   violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A

13   *Monell* claim can be predicated on a longstanding practice or custom, the failure to adequately

14   train, or a constitutional violation committed or ratified by an official with final policy-making

15   authority. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010),

16   *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

17       The CCSF contends that the plaintiff has not established a constitutional violation of her First

18   or Fourteenth Amendment rights, a causal connection between any violation and the discipline, or

19   — even assuming a violation — any offending policy or ratification.[58]

20   **2.1.  First Amendment Claim**

21       The plaintiff contends that she spoke out about racial and gender discrimination in the

22   workplace, a matter of public concern, and she spoke based on personal ethical concerns beyond

23   her official duties and as a whistleblower.[59] The CCSF counters that she spoke as a public

24

25

26   [56] FAC – ECF No. 29 at 56–58 (¶¶ 93–100), 62–65 (¶¶ 118–29).

     [57] Def.'s Reply – ECF No. 85 at 5 (making this argument, citing its earlier opposition/cross-motion).

27   [58] Def.'s Opp'n & Cross-Mot. – ECF No. 82-2 at 21–31.

28   [59] Pl.'s Reply & Opp'n – ECF No. 83 at 13–15.

*United States District Court*
*Northern District of California*

employee about matters of private concern, which means that she has no First Amendment right, and that any discipline was not a response to her speech.[60]

The plaintiff is a public employee who asserts a First Amendment claim of retaliation. Addressing the claim requires balancing her free-speech rights with the government's interest in avoiding disruption and maintaining workforce discipline. *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 904 (9th Cir. 2021). This framework — known as the *Pickering* balancing test — considers five elements: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Hernandez v. City of Phoenix*, 43 F.4th 966, 976 (9th Cir. 2022) (citing *Pickering v. Bd. of Ed. of Twp. High Sch.*, 391 U.S. 563 (1968)); *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009); *Ostley v. CCSF*, No. 21-cv-08955, 2023 WL 4053800, at *4 (N.D. Cal. June 15, 2023). The plaintiff must establish the first three elements. Then the burden shifts to the government for elements four and five. *Eng*, 552 F.3d at 1070–72. The plaintiff also must establish that her employer took adverse employment actions against her that were reasonably likely to chill her exercise of her First Amendment rights. *Ostley*, 2023 WL 4053800, at *4 (citing *Coszalter v. City of Salem*, 320 F.3d 968, 974–77 (9th Cir. 2003), for its discussion of the interplay between retaliation and the chilling of protected speech).

Whether speech is a matter of public concern is a question of law. *Eng*, 552 F.3d at 1070. It is a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the community," an inquiry that is determined by the content, form, and context of the statement. *Connick v. Myers*, 461 U.S. 138, 146 (1983). Content is the most important factor. *Ostley*, 2023 WL 4053800, at *5 (citing *Desrochers v. City of San Bernadino*, 572 F.3d 703, 710 (9th Cir. 2010)). Whether the plaintiff's speech was made as a private citizen (not a public

---

[60] Def.'s Opp'n & Cross-Mot. – ECF No. 82-2 at 21.

1    employee) is a mixed question of law and fact. *Id.* (citing *Coomes v. Edmonds Sch. Dist. No. 84*,

2    816 F.3d 1255, 1260 (9th Cir. 2016)). There are three principles that guide this inquiry: (1) whether

3    the employee confined his communications to the chain of command; (2) the subject matter of the

4    communication; and (3) whether the public employee "speaks in direct contravention to his

5    supervisor's orders." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066–75 (9th Cir. 2013).

6        Here, even if the plaintiff spoke on a matter of public concern, the uncontroverted evidence —

7    summarized in the Statement — is that she did so as part of her job, primarily in the form of

8    complaints and disagreements about work tasks, behavior of supervisors and subordinates, and the

9    work environment. Her speech thus was not protected. Moreover, the verbal warning was about

10   tone, the five-day suspension (upheld in arbitration and on review) was based on insubordination

11   and forwarding internal emails, and the fifteen-day suspension (also upheld) was based on

12   communications to the City Attorney, failure to follow her supervisor's directives, and

13   unprofessional conduct.[61] Whether analyzed under element three (the plaintiff's burden) or

14   elements four and five (the CCSF's burden), disputes of fact do not preclude summary judgment.

15       **2.2.  Fourteenth Amendment Claim**

16       The plaintiff contends that the CCSF violated her due-process and equal-protection rights

17   during the disciplinary proceedings. No disputes of fact preclude summary judgment.

18       **2.2.1.  Due Process**

19       Under *Skelly v. State Personnel Board*, a public employer must provide its employee minimum

20   procedural safeguards before taking an employment action that adversely affects the employee's

21   property interest in employment, compensation, or benefits: (1) notice of the proposed action; (2)

22   the grounds for the proposed action; (3) a copy of the charges and materials that are the predicate

23   for the proposed action; and (4) the opportunity to respond to the proposed action, either orally or

24   in writing. 15 Cal. 3d 195, 215 (1975). Post discipline, the employer must provide the opportunity

25   for a full evidentiary hearing. *Townsel v. San Diego Metro. Transit Develop. Bd.*, 65 Cal. App. 4th

26

27

28   ───────────────
     [61] *See supra* Statement.

United States District Court
Northern District of California

1    940, 949–51 (1998). Due process requires a reasonably impartial, non-involved reviewer.

2    *Bollinger v. San Diego Civ. Serv. Comm'n*, 71 Cal. App. 4th 568, 576 (1999).

3        The record — summarized in the Statement — contradicts the plaintiff's assertion that she was

4    denied due process. The CCSF imposed the suspensions only after arbitrators — following full

5    hearings — held that the discipline was justified. It imposed the thirty-day suspension and,

6    ultimately, terminated the plaintiff. The union cancelled the arbitration for the thirty-day

7    suspension. No disputes of fact show that the plaintiff was denied pre-discipline or post-

8    deprivation remedies through the arbitration hearings, the appeal to the Civil Service Commission,

9    and the state-court proceedings. *Parratt v. Taylor*, 451 U.S. 527, 538 (1981) (post-deprivation

10    remedies can satisfy due process), *overruled on other grounds by Daniels v. Williams*, 474 U.S.

11    327 (1988). The plaintiff may disagree with the outcome, but she was not denied due process.

12        **2.2.2.  Equal Protection**

13        The equal-protection claim turns on whether "persons similarly situated" were not "treated

14    alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). There is a "very close

15    relationship" between Title VII and equal-protection claims. *Fed. Dep. Ins. Corp. v. Henderson*,

16    940 F.2d 465, 472 & n.14 (9th Cir. 1991) (the analysis of a § 1983 claim generally depends on the

17    outcome of the Title VII analysis). As discussed below in the Title VII section, the plaintiff cannot

18    show that the reasons for the adverse employment actions were pretextual.

19        **2.2.3.  Other *Monell* Elements**

20        Without a constitutional violation, there is no *Monell* liability. Even if there were a predicate

21    constitutional violation, the plaintiff has not established either a municipal policy of deliberate

22    indifference to the plaintiff's constitutional right that was the moving force behind the violation or

23    ratification. *Plumeau*, 130 F.3d at 438; *Clouthier*, 591 F.3d at 1249–50.

24        A practice or custom must be more than "random acts or isolated events" and instead must be a

25    "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44

26    (9th Cir. 1988), *overruled on other grounds by Bull v. City and County of San Francisco*, 595 F.3d

27    964 (9th Cir. 2010). A single incident of unconstitutional activity does not result in liability unless it

28    was caused by an existing, unconstitutional municipal policy. *Oklahoma City v. Tuttle*, 471 U.S.

United States District Court
Northern District of California

1  808, 823–24 (1985). Also, the policy must be linked to municipal policymakers. *Id.* at 821. An act

2  that results from a custom may subject a municipality to liability, even if a decisionmaker has not

3  formally approved the custom, if the relevant practice is so widespread that it has the force of law.

4  *Brown*, 520 U.S. at 404.

5       The plaintiff identifies a directive by City Attorney Cecilia Mangoba — in collaboration with

6  the Department of Human Resources — that prohibited the plaintiff from using City email to raise

7  concerns about management decisions. She points to the report (summarized in the Statement) that

8  identified the CCSF's defensive response to complaints (as opposed to addressing them fairly).[62]

9  She contextualizes this with the CCSF's allegedly retaliatory actions against her.[63] The email

10  policy is a generalized, content-neutral restriction that restricts all employees from using City

11  resources for non-City business. It does not target the plaintiff's speech. The EEO report, while

12  critical, does not tie the specific deficiencies to the plaintiff's case or a policymaker's actions.

13  None of these policies implicate equal protection. Even if there were a viable First Amendment

14  claim, there is no evidence of a policy or ratification related to any constitutional basis.

15

16  **3.  Claims One, Four, and Seven — Retaliation and Discrimination**

17       Claim one charges retaliation in violation of Title VII and the FEHA, claim four charges

18  gender discrimination in violation of Title VII, and claim seven charges failure to prevent

19  retaliation, discrimination, and harassment in violation of Title VII and the FEHA.[64] The court

20  grants the CCSF summary judgment on all counts.

21       On a motion for summary judgment, courts analyze Title VII and FEHA claims using the

22  burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v.*

23  *Green*. *Young v. Buttigieg*, No. 19-CV-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16,

24

*United States District Court*
*Northern District of California*

---

25  [62] Pl.'s Mot. – ECF No. 81 at 29–30; Conversation & Emails, Exs. 18–20 to Pl.'s Decl. – ECF No. 81-
26  1 at 85–86, 89, 97; Pl.'s Reply & Opp'n – ECF No. 83 at 28, 31; Report, Ex. C to Pl.'s Decl. – ECF
No. 83-1 at 15–23.

27  [63] Pl.'s Mot. – ECF No. 81 at 28–29; Pl.'s Reply & Opp'n – ECF No. 83 at 29.

28  [64] FAC – ECF No. 29 at 53–56 (¶¶ 81–92), 59–62 (¶¶ 108–17), 65–70 (¶¶ 130–43).

1    2021) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)) (Title VII); *Flait*

2    *v. N. Am. Watch Corp.*, 3 Cal App. 4th 467, 475–76 (1992) (FEHA). Under this framework, the

3    plaintiff must present a prima facie case of discrimination. Then the burden shifts to the defendant

4    to articulate a nondiscriminatory reason for the challenged action. If it does, then the plaintiff must

5    raise a triable issue of material fact that the defendant's proffered reasons are pretext for unlawful

6    discrimination. *Young*, 2021 WL 981305, at *6.

7         To state a prima facie claim of Title VII or FEHA retaliation, a plaintiff must show that she

8    engaged in a protected activity under the statute, her employer subjected her to an adverse

9    employment action, and there is a causal link between these two events. *Vasquez v. County of Los*

10   *Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (Title VII); *Lewis v. City of Benicia*, 224 Cal. App. 4th

11   1519, 1533 (2014) (FEHA). Temporal proximity between the protected activity and adverse action

12   may establish a causal link. *Flores v. City of Westminster*, 873 F.3d 739, 750 (9th Cir. 2017)

13   ("[D]epending on the circumstances, three to eight months is easily within a time range that can

14   support an inference of retaliation.").

15        To plead employment discrimination under Title VII, a plaintiff must show that (1) she is a

16   member of a protected class, (2) she was qualified for the position and was performing

17   satisfactorily, (3) she experienced an adverse employment action, and (4) similarly situated persons

18   outside the protected class were treated more favorably. *Hawn*, 615 F.3d at 1156. To establish

19   element four, a plaintiff must allege either direct evidence of discrimination (such as derogatory

20   comments about her gender or race) or circumstantial evidence of favorable treatment of similarly

21   situated persons outside the protected class or other circumstances about the adverse employment

22   action that allows an inference of discrimination. *Austin v. City of Oakland*, No. 17-CV-03284

23   YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018). Employees are similarly situated if they

24   have "similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. A comparator need not

25   be identical, but the plaintiff must show that the comparator is similarly situated in all material

26   respects. *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

27        An employer can establish a nondiscriminatory reason through evidence of performance

28   deficiencies or insubordination. *Vasquez*, 349 F.3d at 641; *Unt v. Aerospace Corp.*, 765 F.2d 1440,

United States District Court
Northern District of California

1447 (9th Cir. 1985). A plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered explanation is not credible because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004). Circumstantial evidence of pretext must be specific and substantial. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).

### 3.1. Retaliation

There are no protected activities temporally near the fifteen-day and thirty-day suspensions or the termination. There are protected activities within four months of the five-day suspension. Assuming that the plaintiff established a prima facie case for the five-day suspension, the CCSF had a legitimate basis for its employment decisions. The five-day suspension was based on insubordination (recording a deed contrary to instruction) and unprofessionalism (sending emails to solicit feedback and confirmation). The DHR-EEO finding documented incidents to support the suspension, and the arbitrator found just cause to support the discipline. The Superior Court denied the plaintiff's petition for a writ of mandate to overturn the five-day suspension, and the First District affirmed.[65] The plaintiff's evidence of pretext (emails between CCSF employees discussing her disciplines, the timing of the suspension, the lack of evidence against her, and the vagueness and inconsistent application of policies)[66] does not directly show that the CCSF was motivated by discrimination or that its explanation for the disciplinary measures were not credible or believable.

### 3.2. Gender Discrimination

The plaintiff identifies a male employee, Derek Ah'Nin, who had a similar job, accused the plaintiff of misconduct that she disputes, and was not disciplined. Also Mr. Fuchs yelled at the plaintiff and was not disciplined.[67] Assuming that they are comparators who establish a prima

---

[65] *See supra* Statement.

[66] Pl.'s Mot. – ECF No. 81 at 13, 16, 21, 23; Pl.'s Reply & Opp'n – ECF No. 83 at 10, 16–17, 20–21, 25.

[67] Pl.'s Reply & Opp'n – ECF No. 83 at 20; Email Chain, Ex. I1 to Pl.'s Decl. – ECF No. 57-1 at 83–84; Email, Ex. V to FAC – ECF No. 29 at 195.

facie case, the CCSF had a legitimate basis for its employment decisions. The reasons for the five-day suspension are discussed in the last paragraph. The charges and outcomes for the other disciplinary proceedings — the two suspensions and the dismissal — are summarized in the Statement and include a failure to follow instructions, unprofessional conduct, inappropriate communications, and other legitimate, non-discriminatory reasons for the discipline and termination. The plaintiff's evidence of pretext falls short here too.

### 3.3.  Failure to Prevent Retaliation, Harassment, and Discrimination

There is no standalone duty under Title VII to prevent discrimination, retaliation, or harassment. *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). Under FEHA, an employer must take reasonable steps to prevent discrimination, retaliation, and harassment, but the plaintiff must first prove an underlying claim. Cal. Gov't Code § 12940(k); Cal. Code Regs., tit. 2, § 11023; *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 288 (1998); *Carter v. Cal. Dep't of Veterans Affairs*, 38 Cal. 4th 914, 925 n.4 (2006). There is no underlying claim and thus no FEHA derivative claim.

### CONCLUSION

The court grants the CCSF summary judgment on all claims.

**IT IS SO ORDERED.**

Dated: March 31, 2025

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California